Gustafson, J., dissenting: I would hold invalid the regulation on which the fraud penalty at issue depends. Section 6664(a)(1)(A) states an unambiguous term, i.e., “the amount shown as the tax by the taxpayer on his return”; but the IRS’s corresponding regulation — 26 C.F.R. section 1.6664-2(c)(1), Income Tax Regs. — gives a definition that contradicts almost every substantive word in that statutory term. The regulation modifies the term to mean an amount that— • is not “shown” but rather has to be derived; • is not an amount of “tax” but rather is tax reduced by excess credits; • is not shown “by the taxpayer” but rather is asserted by the IRS as the result of its examination, in contradiction of what was shown “by the taxpayer”; and • is not shown “on the return” but rather must be derived from information that is not “on the return”. The regulation thereby undertakes to impose the penalty to an extent that the statute does not. I. Introduction Petitioner Rick D. Feller filed income tax returns for 1992 through 1997 on which he reported income tax liabilities greater than he actually owed, because he incorrectly reported as wages certain amounts that he did not in fact receive. For example, for 1992 he reported a total tax liability of $60,380,[1] whereas the IRS determined that in fact he owed only $30,022. That is, Mr. Feller’s returns overstated his total tax liability. However, Mr. Feller also incorrectly reported, as Federal tax withholding from wages, certain amounts that were not in fact withheld from his wages (because the wages were fictitious). For example, for 1992 he reported total tax withholding from wages as $138,097, whereas only $3,097 was actually withheld, and $135,000 was a fraudulent overstatement of his withholding. As a result, Mr. Feller reported on his returns net amounts due that were much less than he actually owed. That is, his returns understated his net amount due to the IRS and in fact claimed instead for 1992 (for example) a refund of $86,181. When Mr. Feller was discovered, he pleaded guilty to submitting a false tax return for one of the years in issue. For his crime he was sentenced to 15 months in prison. The IRS also determined against Mr. Feller a civil fraud penalty pursuant to section 6663(a), which penalty applies “[i]f any part of any underpayment of tax required to be shown on a return is due to fraud”. (Emphasis added.) The term “underpayment” is defined in section 6664(a) of the Internal Revenue Code and in section 1.6664-2(a) of the Income Tax Regulations (26 C.F.R.). This case turns on the meaning of “underpayment” in section 6664(a), which in turn depends on the meaning of the term “amount shown as the tax by the taxpayer on his return” that appears in that statute. II. The statute and regulation at issue A. The statute: section 6664(a) Section 6664(a) defines the “underpayment” to which the fraud penalty of section 6663(a) applies. In simplified terms, the “underpayment” is the excess of one’s actual liability over his reported liability — i.e., tax “imposed” minus tax “shown” equals “underpayment”. Section 6664(a) provides as follows: SEC. 6664(a). UNDERPAYMENT. — For purposes of this part, the term “underpayment” means the amount by which any tax imposed by this title exceeds the excess of— (1) the sum of— (A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over (2) the amount of rebates made. For purposes of paragraph (2), the term “rebate” means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.[2] This definition of “underpayment” follows closely the definition of a tax “deficiency” in section 6211(a), employing terms used in that section (“tax imposed”, “exceeds the excess”, “amount shown”, “previously assessed”); and the definition of “rebate” follows closely the definition of the same term in section 6211(b)(2). However, unlike the definition of “underpayment” in section 6664(a), the definition of “deficiency” in section 6211(a) is qualified by section 6211(b)(1), which provides that “For purposes of this section [i.e., not “For purposes of this title”] * * * [t]he tax imposed by subtitle A and the tax shown on the return shall both be determined * * * without regard to the credit under section 31 [i.e., “Tax Withheld on Wages”]”. Withholding credits are thus explicitly excluded from the Code’s “deficiency” equation; but the Code’s “underpayment” equation in section 6664(a) that is at issue here does not mention withholding credits. B. The regulation: 26 C.F.R. section 1.6664-2 The regulation implementing the fraud penalty largely repeats the definition of “underpayment” given in the statute. Moreover, the regulation defines “tax imposed” in a manner consistent with the use of that term in the deficiency context. That is, even though section 6664(a) is, as we have noted, silent about withholding credits, the regulation borrows from the deficiency context (section 6211(a)) and explicitly defines the minuend of the equation — “tax imposed”— without regard to withholding credits:[3] (b) Amount of income tax imposed. For purposes of paragraph (a) of this section, the “amount of income tax imposed” is the amount of tax imposed on the taxpayer under subtitle A for the taxable year, determined without regard to— (1) The credits for tax withheld under sections 31 (relating to tax withheld on wages) and 33 (relating to tax withheld at source on nonresident aliens and foreign corporations) * * *. [26 C.F.R. sec. 1.6664-2(b), Income Tax Regs.; emphasis added.] However, in defining the subtrahend of the equation — the “amount shown as the tax” — the regulation makes one significant emendation: (c) Amount shown as the tax by the taxpayer on his return — (1) Defined. For purposes of paragraph (a) of this section, the “amount shown as the tax by the taxpayer on his return” is the tax liability shown by the taxpayer on his return, determined without regard to the items listed in §1.6664-2(b)(1), (2), and (3), except that it is reduced by the excess of— (i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) * * * over (ii) The amounts actually withheld * * * for such taxable year. [26 C.F.R. sec. 1.6664-2(c), Income Tax Regs.; emphasis added.] Under this regulation, the “amount shown” is thus first determined “without regard to the items listed in §1.6664-2(b)(1)” — i.e., without regard to withholding credits — but is then reduced by excess withholding credits. Without this provision, if Mr. Feller’s “amount shown as the tax” ($60,380 for 1992) is subtracted from his “tax imposed” ($30,358), then the difference is less than zero, he has no underpayment at all, and he is not subject to the fraud penalty. The effect of this regulatory provision, however, is to reduce the “amount shown as the tax” (Mr. Feller’s $60,380) by the excess withholding credits ($135,000 for 1992) in order to reveal the extent to which the taxpayer under-reported his net liability. For Mr. Feller this modification yields an “amount shown” that is negative ($60,360 - $135,000 = -$74,640) and that therefore, when subtracted from “tax imposed”, does not decrease his “underpayment” but rather increases it. This regulation thus aims to measure the true culpability of a return like Mr. Feller’s, rather than overlooking the excess credits in the computation of the penalty. III. Regulations as law Under our Constitution, it is Congress that enacts laws. See U.S. Const., art. I, sec. 7. The first enumerated power given to Congress (and not to the Executive) is the “Power To lay and collect Taxes, Duties, Imposts and Excises”. Id. sec. 8, cl. 1.[4] As the Supreme Court observed in Whitman v. Am. Trucking Associations, 531 U.S. 457, 472 (2001): Article I, § 1, of the Constitution vests “[a]ll legislative Powers herein granted ... in a Congress of the United States.” This text permits no delegation of those powers * * *. Only the legislature can legislate. Only Congress can enact tax laws. However, since at least as early as 1828 (i.e., 40 years after the Constitution was ratified), the Secretary of the Treasury has been explicitly authorized by statute to promulgate “regulations”.[5] Such regulations acquire the force of law only derivatively, through statutes enacted by Congress— either because a statute explicitly authorizes an agency to promulgate “legislative regulations” or because the agency that is charged by law with administering a statute issues “interpretive regulations” [6] that interpret the statute, and the courts defer to that interpretation. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-845 (1984). The parties and the majority of this Court acknowledge that the regulation at issue — 26 C.F.R. section 1.6664-2(c)(1) — is in the second category described in Chevron — i.e., so-called “interpretive regulations”. Such interpretive regulations embody the Treasury “department’s construction of a statutory scheme it is entrusted to administer”, Chevron, 467 U.S. at 844, and are generally authorized in section 7805(a) (“the Secretary shall prescribe all needful rules and regulations for the enforcement of this title”). In reviewing interpretive regulations, “a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.” Id. As the majority explains, following Chevron we conduct a two-step review of the regulation: First, we ask “‘whether Congress has directly spoken to the precise question at issue’ and second, if the statute is “ ‘silent or ambiguous’”, we ask whether the regulation reflects a reasonable construction of the statute. Majority op. p. 505 (quoting Chevron, 467 U.S. at 842-843). IV. Discussion There is no question that the deliberate reporting of fictitious withholding credits is fraudulent. There is no question that Congress could well impose a civil penalty on such fraud (in addition to the criminal penalties that it has imposed and that Mr. Feller has borne). The question is whether in fact Congress did so when it imposed the fraud penalty on “underpayments”, defined as “tax imposed” minus “amount shown”, or whether instead the Treasury Department went beyond the statute when it promulgated the regulation. A. The plain meaning of the statute is not ambiguous. The term at issue is “the amount [1] shown [2] as the tax [3] by the taxpayer [4] on his return”. Sec. 6664(a)(1)(A). Under section 6664(a) this amount is subtracted from “tax imposed” (i.e., the actual tax liability) to yield the “underpayment”. The plain meaning of this term could hardly be clearer: In the first place, the amount in section 6664(a)(1)(A) is an amount “shown”. It is therefore an amount that is visible. The plain language steers us away from an amount that would need to be determined by investigation or correction and points us simply to what is “shown”. Section 1.6664-2(c)(1) of the regulations, however, employs the “tax liability shown * * * except that it is reduced by” excess credits, which are determined by reference to “amounts actually withheld” as compared to “amounts shown by the taxpayer on his return as credits”. (Emphasis added.) In Mr. Feller’s case, the resulting negative number (-$74,640) is not shown anywhere on his 1992 return, nor does the return show the constituent numbers necessary to yield that negative number. Rather, Mr. Feller hid the amount “actually withheld” — i.e., $3,097 — and certainly did not cause it to be “shown” on his return. The regulation thus looks to what is deliberately not shown and thereby ignores the plain language of the statute that describes an amount “shown”. Second, the amount in section 6664(a)(1)(A) is “tax”. Of course, the Code also has provisions about other kinds of amounts — e.g., of income, deductions, costs, basis, exclusions, credits, payments, penalties, and so on — but section 6664(a)(1)(A) refers to an amount of “tax”, a term not at all interchangeable with those other kinds of amounts. Section 1.6664-2(c)(1) of the regulations, on the other hand, though it properly begins with the “tax” shown, reduces it by excess withholding credits to yield not the taxpayer’s tax shown but a number — in Mr. Feller’s case, a fictitious negative number (-$74,640 for 1992) — that is neither his actual tax liability nor his reported tax liability. This negative number is instead a number that, when used in the underpayment calculation, shows the size of his net liability to the IRS. However, the plain meaning of the statutory language restricts us to “tax” that is shown on the return, and the statutory language gives no warrant for injecting excess credits into the equation. Third, the amount in section 6664(a)(1)(A) is shown “by the taxpayer”. Of course, the Code authorizes the IRS to make its own determinations of amounts relevant to tax liabilities; but plainly section 6664(a)(1)(A) describes an amount shown “by the taxpayer”. Section 1.6664-2(c)(1) of the regulations, on the other hand, corrects the amount shown “by the taxpayer” on his return and replaces it with a number determined by the IRS. The formula in the regulation thus wanders from the plain language of section 6664(a)(1)(A), which looks to an amount shown “by the taxpayer”. Fourth, the amount in section 6664(a)(1)(A) is an amount shown “on his return”. If Mr. Feller’s 1992 return had included a $135,000 entry explicitly for “excess credits” (or an amount of tax reduced by $135,000 of excess credits), then there could hardly have been fraud on the return, since that candid reporting would have confessed the very fabrication that was perpetrated on the return. But of course the excess withholding credit amount of $135,000 was an amount that did not appear as such anywhere on, and could not be derived from, his return. By bringing that undisclosed amount into the computation, the regulation contradicts the plain meaning of the statutory description of an amount “on the return”. It is true that some terms in the Code are “terms of art” whose true meaning “may not be immediately plain on their face”. Concurring op. p. 516. But this is a term so explicit, so at odds with the regulatory definition, and so consistent with the tax return itself that it cannot be explained away in this fashion. The Form 1040 tax return does not raise any question about the plain meaning of the term but faithfully corresponds to it — and not to the artful revision of the regulation. The return includes a line for “total tax”, and withholding credits are reported on the return only after that “total tax” entry.[7] One looks in vain on the Form 1040 for any “show[ing]” of excess withholding credits. More important, one looks in vain on the Form 1040 for any entry denominated “tax” that takes into account any withholding credits, whether “actual” or “shown”. Instead, the only “amount shown as the tax by the taxpayer on his return” is a “total tax” amount before any payments or credits. On Mr. Feller’s tax return for 1992, that “total tax” (before withholding credits) that was “shown as the tax by the taxpayer on [line 53 of] his return” was no less than $60,380. (See supra note 1.) Since the “tax imposed” was less than this amount, there was no “underpayment” reflected on the return. B. The statutory silence about “credits” is no warrant for the innovation in the regulation. The majority observes, however, that— the statutes do not speak expressly to the precise issue whether withholding credits can be taken into account when calculating an underpayment for purposes of sections 6663 and 6664(a). * * * Section 6664 is silent and ambiguous with respect to the issue before us; i.e., Congress has not directly addressed the meaning of the term “underpayment” when a taxpayer has overstated withholding credits. [Majority op. p. 508.] It is true (to put it more precisely) that section 6664(a)(1)(A) does not state whether “the amount shown as the tax by the taxpayer on his return” does or does not take into account withholding credits. However, the very term at issue is “tax” shown, and the unremarkable lack of any mention of “credits” is simply consistent with the statute’s meaning what it says: To state the obvious, “the amount shown as the tax” refers to tax. Withholding credits under section 31 are another matter. Section 6664(a)(1)(A) can be said to be “silent” about withholding credits — but only in the same way that it is silent about the fuel credit under section 34, silent about payments designated to the Presidential Election Campaign Fund under section 6096, silent about interest under section 6601, and silent about a host of other provisions in the Code that Congress could have incorporated into the “underpayment” definition but did not. It is true that when a statute is “silent”, that silence may leave a gap that can legitimately be filled by regulation, see Chevron, 467 U.S. at 843; but for this purpose a statute can fairly be called “silent” only when it cannot be said that “the intent of Congress is clear”, see id. at 842. Statutory specificity about one subject cannot sensibly be construed as gap-creating “silence” about other subjects. In section 6664(a)(1)(A) Congress was silent about withholding credits because it was providing a rule about tax. When Congress states a plain and unambiguous term involving “the amount shown as the tax by the taxpayer on his return”, the IRS cannot take that enactment as an occasion to craft rules about different subject matter not addressed in the statute — i.e., excess withholding credits not shown by the taxpayer and not appearing on the return — as if Congress had left a gap to be filled in. C. Different language in the deficiency statute does not justify the innovation in the regulation. The majority’s apparent basis for discerning ambiguity in “the amount shown as the tax” is this: That term appears both in the definition of “underpayment” in section 6664(a) and in the similar but not identical definition of a “deficiency” in section 6211(a). See majority op. p. 507. For purposes of defining a “deficiency”, section 6211(b)(1) provides: “The tax imposed by subtitle A and the tax shown on the return[8] shall both be determined without regard to”, inter alia, withholding credits. (Emphasis added.) Section 6664(a) defining “underpayment”, on the other hand, has no equivalent “without regard to” provision. This contrast evidently prompts the suggestion that, for purposes of defining a “deficiency”, the tax “shown on the return” should be determined without regard to withholding credits; but for purposes of defining an “underpayment”, the tax “shown on the return” should be determined with regard to withholding credits. However, an examination of the origin of section 6211(b)(1) shows that this suggestion is not warranted. The basic definition of a “deficiency” in section 271 of the 1939 Code, like today’s definition in section 6211(a), was “tax imposed” minus “amount shown as the tax”; but in the 1939 Code the “amount shown” was “decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax” (emphasis added); and the deficiency was therefore increased by those amounts. The 1939 Code had no provision that “tax imposed” or “amount shown” should be “determined without regard to” withholding credits, since those credits had yet to be invented. The 1939 provision that a “deficiency” would be increased by amounts “refunded” began to be awkward in 1943, when the Current Tax Payment Act of 1943, ch. 120, 57 Stat. 126, provided for the now-familiar mechanism of payroll withholding. For the first time, employers withheld tax from wages, id. sec. 2, and the employee claimed that withholding as a credit (i.e., a payment) on his return, id. sec. 3, 57 Stat. 139. If that resulted in an overpayment of tax, then the overpayment was refunded to the employee. Id. sec. 4, 57 Stat. 140. The next year Congress noted that this regime raised questions about the definition of a “deficiency”[9] (i.e., “tax imposed” over “amount shown” minus “refunds”), which now needed to be revised to make clear that a mere refund of a claimed overpayment of withheld tax (what is now called a “non-rebate refund”) did not skew the computation by reducing tax “shown”. Congress therefore deleted from section 271 the phrase “decreased by the amounts previously abated, credited, refunded, or otherwise repaid” and in its place incorporated and defined the term “rebate”. After this 1944 amendment, section 271 provided (in language very similar to current section 6211): SEC. 271. DEFINITION OF DEFICIENCY. (a) In General. — * * * “deficiency” means the amount by which the tax imposed by this chapter exceeds the excess of— (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, * * * plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over— (2) the amount of rebates, as defined in subsection (b)(2), made. (b) Rules for Application of Subsection (a). — For the purposes of this section— (1) The tax imposed by this chapter and the tax shown on the return shall both be determined without regard to payments on account of estimated tax, [and] without regard to the credit under section 35 * * *; (2) The term “rebate” means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by this chapter was less than the excess of the amount specified in subsection (a)(1) over the amount of rebates previously made * * *. [Individual Income Tax Act of 1944, ch. 210, sec. 14(a), 58 Stat. 245; emphasis added.] Under subsection (b)(2) of the amended statute (as under today’s Code), the “rebate” that decreases “amount shown” (and thereby increases the “deficiency”) includes a refund only if the refund is “made on the ground that the tax imposed” is less than what the taxpayer reported, and does not include refunds made on the mere ground that payments and credits exceed the tax that the taxpayer reported as due. And, lest there be any doubt, subsection (b)(1) makes clear that prepayments and withholding credits do not affect the “tax imposed”[10] or the “tax shown”. When the current penalty regime was enacted in 1989,[11] Congress preempted any equivalent confusion about the effect of non-rebate refunds on the computation of an “underpayment”. It did so by enacting in section 6664(a) a definition of “underpayment” that, like the 1944 “deficiency” definition, omitted any mention of “refunds” and instead subtracted “rebates” from the tax shown on the return. Admittedly, this new “underpayment” definition did not include any instruction that “tax imposed” or “tax shown” is determined without regard to withholding credits and other prepayments. However, the 1944 origin of that language in the deficiency context, set out above, shows that the absence of that instruction in section 6664(a) is not significant. The provision about, and the definition of, “rebates” made such an instruction unnecessary. The “underpayment” definition, new in 1989, never included any mention of non-rebate “refunds” that might have skewed the definition. That 1943-era confusion as to deficiencies was solved in 1944 by the “rebate” provision; and any potential similar confusion as to underpayments was preemptively solved in 1989 when the “underpayment” definition included, in the first instance, the equivalent “rebate” provision. There was therefore never an occasion for including in section 6664(a) a provision that withholding credits should not affect the computation of tax shown. Such a provision would have been redundant. (And the absence in section 6664(a) of any reminder that “tax imposed” is determined without regard to withholding credits did not prevent the agency from so providing, in section 1.6664-2(b) of its regulation, for purposes of computing an underpayment.) D. Section 6201(a)(3) does not justify the innovation in the regulation. Section 6201(a)(3) refers to excess withholding credits that are allowed against “tax shown on the return”. The concurring opinion observes the following: Section 6201(a)(3) provides that such overstated withholding amounts are to be “assessed by the Secretary in the same manner as in the case of a mathematical or clerical error”, and the provision cross-references section 6213(b). Concurring op. pp. 512-513. Section 6213(b)(1) provides for an assessment of an amount of tax “in excess of that shown on the return”, so that the amount “shown on the return” must be an amount that reflects the math error. Concurring op. p. 513. With excess withholding credits, “[a]s with math errors, * * * the amount of tax ‘shown on the return’ is the amount shown by the taxpayer that reflects the overstated withholding credits.” That is, tax “shown” under section 6201(a)(3) must mean tax reduced by excess credits (as the regulation provides under section 6664(a)). Concurring op. p. 514. It is surely proper to attempt to bring these other sections to bear on the meaning of tax “shown” in section 6664(a), but I submit that there are skips and flaws in this analysis of sections 6201(a)(3) and 6213(b). The House report that the concurring opinion cites clearly states that then-current law (before section 6201(a)(3)) already allowed the IRS to retrieve, without deficiency procedures, any excess credit that had been mistakenly allowed against the tax liability. Retrieval of those credits that had been mistakenly allowed against tax liability did not require any new assessment authority to be enacted in section 6201(a)(3). What was new in that section was a procedure for retrieval of refunded credits. Section 6201(a)(3) does not cross-reference section 6213(b)(1) — the paragraph critical to the argument in the concurring opinion — but refers only to section 6213(b)(2) (to make clear that it does not apply). Section 6201(a)(3) does not state or even imply that excess credits are a constituent of tax “shown”. On the contrary, the statute conceives of the tax liability and excess credits as distinct, since it refers to excess credit “allowed against the tax shown on the return”. (Emphasis added.)[12] Furthermore, it is far from clear what the statute means when it states that an overstated credit allowed against tax shown on the return may be “assessed”. Payments that are credited (or not credited) against the tax liability do not increase or decrease the amount of the tax liability. If an ostensible payment or credit that was originally allowed against that liability proves in fact to be no good, that hardly increases the amount of tax; instead it decreases the amount of payments that should be entered. The Internal Revenue Manual (irm) reflects this distinction. It states that an excess withholding credit, once discovered, is in fact not assessed by the IRS as additional tax. Instead, excess credits are recovered either by “an assessment (a TC 290) for the amount of the overstated withholding credit or in limited circumstances with a reversal (TC 807) of the overstated amount.” IRM pt. 21.4.5.4.3(4) (Jan. 24, 2008). (“TC 290” is the code for “Additional Tax Assessment”, and “TC 807” is the code for “Withholding Credits Reversed”.[13]) What is that “limited circumstance” that gets TC 807 treatment? — It is none other than excess credits that have been wrongly applied to the reported liability. The IRM makes it clear that these excess credits wrongly applied are “recovered with a reversal of the credit (i.e., TC 807 * * *)” (emphasis added), not by an assessment of additional tax. IRM pt. 21.4.5.4.3(6) (Jan. 24, 2008). The IRM gives an example: Mary Smith filed her 2008 income tax return reporting a tax liability of $700 and withholding credits of $500. She overstated her withholding by $100 and the error was not corrected when IRS processed the return. Since Ms. Smith did not claim the overstated amount as a refund (she reported a balance due) and the overstated amount did not result in a refund, a TC 807 may be used to correct the overstatement. [Id.\ The House report indicates that the provisions added in 1954 were codifying existing law, so that today’s law as to correction of non-refunded excess credits, illustrated in the IRM, is the same as pre-1954 law. The meaning of tax “shown” in section 6664(a) is not illuminated by section 6201(a)(3). Section 6201(a)(3) does not state or imply that excess withholding credits that were wrongly allowed against the tax liability are later assessed as part of tax “shown”. They are reversed (despite the statute’s loose reference to their being “assessed”), and the suggestion that they are assessed as tax “shown” requires subtle and creative cross-referencing not warranted in the statute. E. Even if section 6664(a)(1)(A) were ambiguous, the regulation is inconsistent with congressional intent. For the reasons stated above, section 6664(a)(1)(A) is not ambiguous, and under the Supreme Court’s Chevron analysis, the inquiry stops there. However, if we were to assume arguendo that the statute is ambiguous and were to proceed to Chevron’s “step 2”, we would then need to determine “whether the agency’s answer is based on a permissible construction of the statute”. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843. Undertaking that step 2 analysis, I find that the definition of “amount shown as the tax” in section 1.6664-2(c)(1) of the regulations (i.e., tax shown reduced by excess credits) is not a permissible construction of the statute. Because the penalty provision in former section 6653(a) incorporated the deficiency definition into the definition of “underpayment”, the pre-1989 penalties did not reach excess withholding credits (which, as we have noted, are expressly excluded from the “deficiency” calculation by section 6211(b)(1)). As the majority acknowledges, majority op. p. 509, the 1989 legislative history includes a statement in a House report “that the definition of ‘underpayment’ in section 6664(a) was not ‘intended to be substantively different from * * * [previous] law.’ H. Rept. 101-247, supra at 1394.” A regulation that would impose the penalty on a new circumstance (excess withholding credits) that had not formerly been reached by the penalty is “substantively different” from the prior law. The IRS’s interpretation is therefore at odds with express congressional intent. If in 1989 Congress had intended to impose a penalty that reached not only under-reporting of “the amount shown as the tax” but also over-reporting of withholding credits, then it would not have used the language that appears in section 6664(a)(1)(A). A different penalty provision in section 6694, enacted in 1976, sheds a helpful light in this regard. Section 6694 imposes an assessable penalty on a tax return preparer for an “Understatement of Taxpayer’s Liability”. The definition of that “understatement” is telling: SEC. 6694(e). Understatement OF Lxability Defined. — For purposes of this section, the term “understatement of liability” means any understatement of the net amount payable with respect to any tax imposed by this title or any overstatement of the net amount creditable or refundable with respect to any such tax. * * * This language from section 6694(e) reflects the concept — i.e., net tax liability after credits — that the regulation would attempt to read into section 6664(a). However, that language has been in section 6694(e) since 1976 — i.e., 13 years before section 6664 was added in 1989 — and was therefore at the ready when Congress enacted the new penalty regime; but Congress did not employ such language in section 6664. Section 6694 shows that when Congress wants to penalize an understatement of a net amount due (or an overstatement of creditable amounts), it knows how to do so. It did so in section 6694 but not by its provision in section 6664(a)(1)(A) as to tax “shown”. V. Conclusion Only the legislature can legislate; only Congress can impose a penalty. I would hold that the penalty that the IRS has determined here — a fraud penalty on overstated withholding credits — has simply not been enacted to the extent that the regulation provides. The regulation’s imaginative definition of “amount shown as the tax by the taxpayer on his return” is not a reasonable interpretation of the statute but is the agency’s impermissible attempt to supplement the statute. Halpern and Wherry, JJ., agree with this dissent. The actual amount of “total tax” shown on line 53 of Mr. Feller’s 1992 return is $57,244.58; but on line 19 of the IRS’s notice of deficiency the “Total tax shown on return or as previously adjusted” is $60,380. Presumably there are previous adjustments that would account for the difference, but the record does not show them. For simplicity’s sake and ease of comparison, I use the IRS’s amount. The definition of “rebate” in section 6664(a) incorporates “the amount specified in paragraph (1)”, in which subparagraph (A) lacks the phrase “as a deficiency” when compared to the equivalent term in section 6211(a)(1)(B). Whether this might render a portion of the erroneous refunds made to Mr. Feller to be rebates (and thus to increase the underpayment) is a question the parties have not addressed in any detail. Respondent makes no contention that Mr. Feller had any “amount of rebates made”, sec. 6664(a)(2), or any “amounts not so shown previously assessed (or collected without assessment),” sec. 6664(a)(1)(B), but rather states in his calculations that those amounts are zero. I therefore disregard rebates in this discussion and use the shorthand definition of “underpayment” (i.e., tax “imposed” minus tax “shown” equals “underpayment”). However, Judge Wherry shows that respondent has a mistaken understanding of section 6664(a) “rebates” that wrongly equates them with section 6211(b)(2) “rebates” despite the phrase “as a deficiency” that is present in section 6211(b)(2) but is absent from section 6664(a). When this error is corrected, the penalty appears to be owing on the portion of the excess credit that was actually refunded. That is, the regulation does not give a special definition to the minuend, “tax imposed”; and neither respondent nor the majority suggests that the statute is ambiguous in referring to “tax imposed”. Much mischief or absurdity might result if “tax imposed by this title” were ambiguous and might refer to tax net of withholding credits. In that event, other Code sections that are like section 6664(a) — i.e., sections that refer to “tax imposed by this title” but do not explicitly exclude the netting of credits — might become problematic. These include section 6001 (requiring that “Every person liable for any tax imposed by this title * * * shall keep such records * * * as the Secretary may from time to time prescribe”), section 6011(a) (requiring that a return be filed by “any person made liable for any tax imposed by this title”), section 6501(a) (providing for assessment of “tax imposed by this title”), and section 6511(a) (setting a deadline for the filing of a claim for refund of “any tax imposed by this title”). These provisions have always been (rightly) understood to apply where there is a tax liability, whether or not that liability has been satisfied by withholding credits. Article I, section 7, clause 1 includes an additional democratic provision particular to tax law: “All bills for raising revenue shall originate in the House of Representatives” — i.e., the house that (in James Madison’s words) “speak[s] the known and determined sense of a majority of the people”. See The Federalist No. 58 (James Madison) (the two houses have “equal authority * * * on all legislative subjects, except the originating of money bills”, which authority is conferred on “the House [of Representatives], composed of the greater number of members, * * * and spealdng the known and determined sense of a majority of the people”). Article I, section 9, clause 4 of the Constitution originally prohibited “direct” taxes; and when the Constitution was amended to curtail that prohibition, the Sixteenth Amendment provided (echoing Article I, section 8) that “The Congress shall have power to lay and collect taxes on incomes”. See Act of May 19, 1828, ch. 55, sec. 10, 4. Stat. 274 (“it shall be the duty of the Secretary of the Treasury, under the direction of the President of the United States, from time to time, to establish such rules and regulations, not inconsistent with the laws of the United States, as the President of the United States shall think proper, to secure a just, faithful, and impartial appraisal of” imported goods, for purposes of customs duties). Judicial deference to interpretive regulations is relatively recent. Through the mid-20th century, courts and commentators concluded that a general rulemaking grant (such as section 7805(a)) authorizing interpretive regulations that have the force of law would be an unconstitutional delegation of legislative authority. See Eristin E. Hickman, “The Need for Mead'. Rejecting Tax Exceptionalism in Judicial Deference”, 90 Minn. L. Rev. 1537, 1567 (2006). However, “The 1960s and 1970s saw a virtual explosion of agency rulemaking”, id. at 1574, and there followed the modern deference regimes (culminating in Chevron), to which the nondelegation doctrine is no longer perceived as an impediment. But see Whitman v. Am. Trucking Associations, Inc., 531 U.S. 457, 487 (2001) (Thomas, J., concurring) (“none of the parties to these cases has examined the text of the Constitution or asked us to reconsider our precedents on cessions of legislative power. On a future day, however, I would be willing to address the question whether our delegation jurisprudence has strayed too far from our Founders’ understanding of separation of powers”). On the Form 1040 for 1988 — the year before sections 6663 and 6664 were enacted — the “Tax Computation” section (consisting of lines 32 through 40) includes, after the computation of taxable income, a line 38 on which one is to “Enter tax”, a line 39 for "Additional taxes”, and a line 40 that totals lines 38 and 39. The next section, entitled “Credits” (lines 41 through 47), consists not of credits in the nature of payments against the tax liability but instead credits (such as the child care credit and the foreign tax credit) that are taken into account in figuring the tax liability. (Not included in this section is the “credit” for withheld tax, which is in the nature of a payment.) Thereafter, a section of “Other Taxes” (lines 48 through 53) includes, for example, the self-employment tax and the alternative minimum tax; and it ends with line 53, which reads: "Add lines 47 through 52. This is your total tax”. Only after this "total tax” on line 53 does the return include an entry (at line 54) for “Federal income tax withheld”, in the section of the return entitled “Payments”. The net amount due after payments and credits is not referred to as tax, but is either an “amount OVERPAID” (line 62) or an “AMOUNT YOU OWE” (line 65). The Forms 1040 for Mr. Feller’s years at issue were the same, with only slight differences in some line numbers. The term “amount shown as tax by the taxpayer on his return” in section 6664(a)(1)(A) is not identical to the phrase “tax shown on the return” in section 6211(b)(1). However, the latter term in section 6211(b)(1) is evidently shorthand for “amount shown as tax by the taxpayer upon his return” in section 6211(a)(1)(A), so we assume it is equivalent to the same term in section 6664(a)(1)(A). See S. Rept. 885, 78th Cong., 2d Sess. 38 (1944), 1944 C.B. 858, 887: Under the system of tax collection which now obtains with respect to individuals, it is apparent that in certain cases the estimated tax payments and the tax withheld at source may exceed the tax shown by the taxpayer on his return. Under the procedure instituted by the Commissioner for handling such cases it is contemplated that the excess of such payments (estimated tax and tax withheld at source) over the tax shown on the return shall be refunded to the taxpayer as expeditiously as possible. If, in such cases, it is subsequently determined that the tax imposed under chapter 1 is greater than the tax shown on the return, the existing definition of deficiency would produce an improper result if the amount so refunded is taken into account in ascertaining the amount of the deficiency. For example, if the taxpayer filed a return disclosing a tax of $600 and claiming a credit of $900 for tax withheld at source, $300 would be immediately refunded. If the Commissioner subsequently determines that the correct tax should be $800, the amount of the tax liability in controversy is $200 and, hence, the deficiency should be $200. However, the definition contained in existing law would indicate a deficiency of $500, that is, the excess of $800 [actual tax] over ($600 [tax shown] minus $300 [refund]). The proposed amendment corrects this defect by providing that the amount of any such refund shall not be taken into account. This 1944 legislative history makes it clear that the “determined without regard to” language of former section 271 (now section 6211) is present in the “deficiency” definition only because non-rebate “refunds” once muddled the deficiency definition. That definitional problem never arose with respect to “underpayment”, for tax shown was never reduced by “refunds”. It seems a truism to say that “tax imposed” does not include credits; a “credit” is not “imposed”; and the problem that Congress addressed in 1944 concerned tax “shown”, not tax “imposed”. It is therefore hard to discern the potential error that Congress sought to correct by this clarification as to “tax imposed”. However, the phrase “tax imposed” does appear in both the basic definition of a deficiency (i.e., “tax imposed” over tax “shown” minus “rebates”) and in the definition of the term “rebates”; and the latter inclusion may have made the clarification seem more necessary. The provision survives today in section 6211(b)(1). The negligence and fraud penalties on “underpayment[s]” were first enacted in 1954 in former section 6653(a) and (b). The definition of “underpayment” in section 6653(c)(1) explicitly incorporated by reference the definition of “deficiency” as corrected in 1944, so that the problem of (non-rebate) “refunds” confusing the definition of “underpayment” never arose under former section 6653. To the same effect, the House report that the concurring opinion cites reflects a clear understanding that “tax shown” is tax (not tax reduced by excess credits, as in section 1.6664-2(c)(l), Income Tax Regs.). In presenting its example, the report twice states that the “tax shown” is $100 — not the $70 that would be yielded by subtracting the excess credit of $30 from the tax of $100. H. Rept. 1337, 83d Cong., 2d Sess. A404 (1954). Similarly, the report refers to the excess credits as “$30 (the tax of $100 shown in the return less the [proper] $70 credit)”; and the report says that this $30 amount “can be immediately assessed as tax shown on the return which was not paid”. That is, the excess credits are (correctly) described not as affecting the amount of the “tax shown” but rather as affecting the amount of the tax shown that has not been paid. By contrast, an “underpayment” in section 6664(a) is calculated by reference to tax “shown”, not by reference to “tax shown that has not been paid”. The House report states that the excess credits can be “assessed as tax shown on the return which was not paid”. That is, the means by which the IRS is to get the $30 is (the report suggests) an assessment (“as tax shown * * which was not paid”). This describes not the character of the amount but the means of collection, and it therefore does not address our issue. See Non-Master File Pocket Guide, IRS Document 10978 (Rev. 10-2006).